Ronald G. DIXON, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Aug. 29, 1989.
Decided: Nov. 9, 1989.

Michael J. Hood, Asst. Public Defender,
Office of the Public Defender, Wilmington,
for appellant.

Timothy J. Donovan, Jr., Deputy Atty.
Gen., Dept. of Justice, Wilmington, for ap-
pellee.

Before MOORE, WALSH and
HOLLAND, JJ.

WALSH, Justice:

The defendant, Ronald G. Dixon ("Dix-
on"), was charged with Robbery in the
First Degree and Conspiracy in the Second
Degree as the result of a robbery that
occurred on May 29, 1987. Following a
jury trial in Superior Court, Dixon was
convicted on the charge of Robbery and
found not guilty on the charge of Conspir-
acy. In this appeal, he contends that the
trial court erred in not suppressing evi-
dence seized as the result of a nighttime
search, in that the application and warrant
were not in accordance with the require-
ments of 11 *Del.C.* §§ 2308 *et seq.* He
also contends that the evidence introduced
at trial was insufficient to support a find-
ing of guilt on the charge of Robbery.
Finding no error in the proceedings below,
we affirm the conviction.

I

According to testimony at trial, the fol-
lowing events took place on the evening of
May 29, 1987. The victim, Stephanie
Brown ("Brown"), and her friend, Susan
Lalor ("Lalor"), parked their car, and were
walking down the street to a nearby res-
taurant when they noticed that two young
men were walking toward them. As
Brown passed the two men she was hit on
the head and knocked to the sidewalk by
one of them, later identified as Dixon.
When she fell, she dropped her purse. De-
spite pleading with Dixon to "[t]ake it [the
purse] and go," he repeatedly kicked her.
Eventually, Dixon ceased his attack, picked

up the purse, and ran off with the other man. Brown and Lalor called the police. When the police responded, Brown and Lalor described the two men to them. Of particular note was that one of the men, later identified as Derris Brooks ("Brooks"), wore a distinctive bill-less cap emblazoned with the letter "Q." The following day a police officer noticed two men fitting the general description of the perpetrators. In particular, the officer noticed that one of the men (Brooks) was wearing the distinctive "Q" cap described by the victim. Dixon and Brooks were arrested. Although both claimed they had been at places other than the scene of the crime, there was noticeable conflict in their respective stories. The two men were placed in a physical lineup and separately viewed by Brown and Lalor. Brown was not able to make a positive identification. However, Lalor positively identified Dixon as the attacker and Brooks as the one who wore the "Q" cap. Following the identification, the police again questioned the two alleged perpetrators. Dixon, when told that he had been identified by an eyewitness, became hostile and the interrogation ended. Brooks, however, gave a second statement, consistent with the version of the crime recounted by Brown and Lalor. Brooks stated that when he and Dixon passed the two women, Dixon knocked one of the women to the ground, grabbed her pocketbook and ran. Brooks also ran from the scene because he was on probation and wished to avoid even a tangential association with criminal activity. Dixon met Brooks in a bar a short time thereafter, told him that there had been five or six dollars in the pocketbook, and then gave him two dollars.

Dixon contacted the police two months after his arrest and said he wished to make a statement. Dixon claimed that it was Brooks who without warning struck the victim and stole her purse. Dixon stated that he had played no role in the planning or commission of the offense and received none of the proceeds.

On the night of the arrest of the two perpetrators, following Lalor's eyewitness identification of the suspects and Brooks'

statement admitting involvement, the police applied for a nighttime warrant to search Dixon's apartment for proceeds of the robbery and clothing worn by the robbers. In the affidavit accompanying the application for the warrant, the police stated in the final two paragraphs of the affidavit that:

[B]oth Dixon and Brooks have been arrested on the charges of Robbery 1st Degree and Conspiracy 2nd. Both suspects are presently awaiting [sic] to have bail set on those charges.

That your affiants request that a nighttime search warrant be granted due to the fact that either suspects [sic] may be able to make bail and could therefore respond to the residence of 1802 West Street, Apartment L and destroy or tamper with any evidence that is listed above.

The search warrant authorization, granted by a Municipal Court Judge, contained the following form language:

This warrant my [sic] be executed in the nighttime as requested in the application, probable cause being shown for the issuance of a nighttime warrant by the attached affidavit.

The police officers executed the warrant at 12:50 a.m. that night. Detectives found a blue warm-up jacket with red, white and blue stripes on the sleeves. The jacket was taken as evidence. At trial, defense counsel moved to suppress the jacket as evidence, arguing that the request for the nighttime warrant was not constitutionally sound and that the warrant itself did not contain the statutory language set forth in 11 Del.C. § 2310(c). The Superior Court denied the motion to suppress and the jacket was admitted into evidence. At trial Lalor testified that Brown's attacker wore a navy blue warm-up jacket with red, white and blue stripes on the sleeves. Lalor stated that the seized jacket admitted into evidence looked like the jacket worn by Brown's assailant. Brown testified that her attacker wore a brightly colored running jacket.

## II

Defendant relies on *Mason v. State,* Del.Supr., 534 A.2d 242 (1987) to support his argument that the trial court erred in not suppressing evidence seized as the result of the nighttime search, in that the application was not in accordance with the dictates of 11 *Del.C.* § 2308. Section 2308 currently provides:

> A search warrant shall not authorize the person executing it to search any dwelling house in the nighttime unless the judge, justice of the peace or magistrate is satisfied that it is necessary in order to prevent the escape or removal of the person or thing to be searched for, and then the authority shall be expressly given in the warrant. . . .

11 *Del.C.* § 2308.

In *Mason,* we held that this provision was clear and unambiguous and that it requires a showing of more than probable cause. "It requires a determination that such action is necessary 'to prevent the escape or removal of the person or thing to be searched for.'" *Mason,* 534 A.2d at 251 (citing 11 *Del.C.* § 2308). Here, defendant argues that the application for the warrant did not demonstrate that a nighttime search was necessary to prevent the escape or removal of the person or thing to be searched for. However, defendant's reliance upon *Mason* is misplaced. A case more factually analogous to the circumstances in the case at bar is *Jensen v. State,* Del.Supr., 482 A.2d 105 (1984). There, the State submitted that since the defendant was presently in police custody and therefore aware of police involvement in the incident, he would likely seek to destroy or remove any evidence linking him to the crime upon release. In *Mason,* however, the police had no valid reason to believe that any evidence would be destroyed. In *Mason,* the defendant (Mason) had supplied another man (Barnett) with a quantity of cocaine. Barnett sold this cocaine to police officers, who immediately placed Barnett under arrest. Mason was not in the vicinity of the arrest, there was no objective evidence tending to support the assertion of the police that Mason

would learn of the arrest before morning, and the police had no support for their contention that evidence would be destroyed if a nighttime search was not conducted. In fact, the only evidence known to exist in Mason's apartment was marked money used to purchase an amount of cocaine earlier that evening. The Court found that Mason, even if he knew of police surveillance, was unlikely to have a desire to destroy money. *Mason,* 534 A.2d at 252.

Thus, this case is closer factually to *Jensen.* Here, the defendants were in custody at the time the police applied for the search warrant. They knew that the police suspected them of the crime. Given the possibility that the defendants would make bail during the night, the police had a reasonable basis to believe that if the search warrant were not executed that evening the evidence would be destroyed. We find that the police alleged with particularity facts sufficient for a neutral judicial officer to find probable cause to believe that a nighttime search was necessary to prevent the removal of the object of the search, as required by 11 *Del.C.* § 2308.

Defendant also cites *Mason* in support of his argument that the warrant issued failed to contain the language necessary to comply with 11 *Del.C.* § 2308. In *Mason* the facts in the affidavit accompanying the application for a nighttime search warrant were insufficient to support a finding that a nighttime search warrant should be issued. In *Jensen* we found that the application was sufficient to support a finding that a nighttime search warrant should be issued. Thus, *Jensen's* holding necessarily reached the issue of whether the language of the warrant satisfied the mandate of section 2308, whereas in *Mason* it was unnecessary to reach this issue. In *Jensen* we held that where a warrant states "'[a] search in the nighttime is expressly authorized for the reasons set forth in the affidavit attached hereto'[,] [the Court] must consider this reference to the affidavits together with the allegations contained therein." *Jensen,* 482 A.2d at 113.

In the case at bar, the warrant authorized a nighttime search, "probable cause being shown for the issuance of a nighttime warrant by the attached affidavit." The application and the affidavits attached to the warrant were sufficient to support a finding that a nighttime search was "necessary in order to prevent the escape or removal of the person or thing to be searched for," as required by section 2308. Therefore, it is evident that the warrant was not defective.

Defendant also contends that *Mason* mandates that the specific language of 11 *Del.C.* § 2310(c) be used. While we stated in *Mason* that "the form of the search warrant to be issued when a nighttime search for a dwelling has been authorized is prescribed by statute. 11 *Del.C.* § 2310(c)," *Mason*, 534 A.2d at 253, we did not rule that form should control over substance. The warrant in *Mason*, when considered together with the attached affidavits, failed to make "a specific finding of *necessity* for a nighttime search of a residence, by a neutral magistrate," as required by statute. *Id.* In addition, several substantive provisions of the warrant in *Mason* differed from the provisions of the form warrant at 11 *Del.C.* § 2310(c). For example, the warrant in *Mason* allowed for execution within ten days, while section 2310(c) requires execution within three days. *Id.* at 254. We also noted that the warrant used "more closely follow[ed] the 'form of search warrant where search of a dwelling house in the nighttime is *not* authorized.'" *Id.* at 253 (quoting 11 *Del.C.* § 2310(b)). The search warrant in this case does not suffer from these defects.

The warrant here, like the warrant in *Jensen*,[1] when considered in conjunction with the attached affidavits, made a showing of necessity for a nighttime search warrant sufficient to meet the mandates of 11 *Del.C.* §§ 2308 *et seq.* Defendant's contention that *Mason* mandates the form of warrant at 11 *Del.C.* § 2310(c) as the sole form of warrant for a nighttime search of a dwelling house is unpersuasive. The stat-

ute itself states "The following shall be *sufficient* form of search warrant where search of a dwelling house in the nighttime is authorized." 11 *Del.C.* § 2310(c) (emphasis added). By its terms it is clear that the form presented by section 2310(c) is not the sole form of warrant which will satisfy the dictates of 11 *Del.C.* § 2308. Here the warrant, by reference and incorporation of the attached affidavits, alleged sufficient facts and made a showing of necessity adequate to authorize a nighttime search warrant of a dwelling house. Moreover, without reference to the accompanying affidavits, the warrant expressly authorized a nighttime search. Thus the warrant met the requirements of 11 *Del.C.* §§ 2308 *et seq.*, and the trial judge committed no error in refusing to suppress the evidence recovered in the execution of the warrant at issue.

### III

■ Defendant's contention that the evidence at trial was insufficient to support a finding of guilt is also without merit. The standard for review of such a contention is "whether, after viewing the evidence in the light most favorable to the prosecution, [including all reasonable inferences to be drawn therefrom,] any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We mirrored this language in *Davis v. State*, Del.Supr., 453 A.2d 802, 803 (1982).

At trial, Dixon argued that the robbery was committed by Brooks. He renews that contention on appeal, pointing to the following facts: (1) that the victim was unable to make a positive identification of him at the physical lineup, (2) that the initial police report lists the man in the "Q" cap as "suspect one" (the attacker), and (3) that a witness testified that Dixon was not wearing the red, white and blue striped jacket on the night of the offense. He argues that when considered together, these facts cast a reasonable doubt on whether he or

---

1. In *Jensen* the warrant stated, "A search in the nighttime is expressly authorized for the rea-

sons set forth in the affidavits attached hereto." *Jensen*, 482 A.2d at 113.

Brooks was the active participant. The jury apparently decided that the initial police report erroneously listed Brooks (the man in the "Q" cap) as "suspect one" and rejected Dixon's version of the incident in favor of those of Brown, Lalor and Brooks. "It has long been our law that the jury is the sole judge of the credibility of the witnesses and responsible for resolving conflicts in the testimony." *Tyre v. State,* Del.Supr., 412 A.2d 326, 330 (1980). The jury, as sole trier of fact, was entitled to make such a determination as to the credibility of evidence submitted. Since the verdict was supported by the evidence, it will not be disturbed on appeal.

The judgment of the Superior Court is AFFIRMED.