# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,

  v.

BRITTANY A. ANDERSON,

  Defendant.

)
)
)
)
)
)
)
)

Case No. 1611018151

Submitted: May 21, 2018
Decided: July 2, 2018

William Raisis, Esquire
Deputy Attorney General
820 N. French Street, 7th Floor
Wilmington, DE 19801
*Attorney for the State of Delaware*

Benjamin S. Gifford IV, Esquire
Attorney At Law
14 Ashley Place
Wilmington, DE 19804
*Attorney for Defendant*

## DECISION AFTER TRIAL

**SMALLS, C.J.**

## FACTS & PROCEDURAL HISTORY

The Defendant Brittany A. Anderson (hereinafter "Defendant"), was arrested on November 28, 2016, and charged with Driving Under the Influence ("DUI"), in violation of 21 *Del. C.* §4177, Failure to Remain Within a Single Lane, in violation of 21 *Del. C.* §4122(1), and Possession of Marijuana, in violation of 16 *Del. C.* § 4764(c). On May 4, 2017, as a sanction for the State's failure to provide discovery as required by Court of Common Pleas Criminal Rule 16, as ordered by the Court, I granted Defendant's motion to exclude all evidence related to Defendant's blood draw and the chemical analysis of Defendant's blood. On May 11, 2017, Defendant filed a motion for reargument of the Court decision denying his motion to exclude all evidence which was denied.[1] Trial was scheduled for May 21, 2018. At trial, the Court heard testimony, reviewed the Motor Vehicle Recorder ("MVR") and all other evidence admitted. The case was taken under advisement for the Court to consider both the issue of probable cause and whether when all the evidence was considered, it proved the offenses beyond a reasonable doubt.

Delaware State Trooper McKenna ("McKenna") testified that on November 28, 2016, he was the first responder to a 911 call involving an accident where a vehicle had gone off the main road and was stopped in the backyard of a residence. McKenna testified that the vehicle had hit some "boulders" or "large rocks" located in the residence's front yard which damaged the vehicle. McKenna further testified when he arrived on scene, Defendant was outside of the vehicle crying and confused regarding her location. In addition, McKenna testified he detected an odor of alcohol emitting from Defendant.

---

[1] *See* Opinion. *State v. Anderson*, No. 1611018151, 2017 WL 3412157 (Del. Com. Pl. Aug. 9, 2017), C. J. Smalls.

On cross examination, McKenna testified that there were no photos taken of the accident. Furthermore, McKenna prepared his police report as an accident report and there was no language regarding the alcohol odor in said report. McKenna further testified he had not seen Defendant driving the vehicle and since he believed this to be a DUI investigation, he called another Trooper to assist with the investigation.

Delaware State Trooper Kirchenbauer ("Kirchenbauer") arrived on scene and saw McKenna and Defendant standing outside of a vehicle. Kirchenbauer testified he immediately smelled an odor of alcohol and marijuana and there was a clear plastic cup outside of the vehicle and a second cup in the center console, which contained brown liquid inside. Kirchenbauer further testified that Defendant admitted to driving but was not sure how the accident occurred. Kirchenbauer testified that Defendant later admitted to drinking a couple beers. Furthermore, Defendant stated she did not know where she was and was crying with makeup running down her face. At that time, Kirchenbauer asked Defendant to perform field sobriety tests.

During the Horizontal Gaze Nystagmus ("HGN") test, Kirchenbauer testified that Defendant had difficulty with her eyes following the pen without moving her head and prior to beginning the test, Defendant stuck out her tongue.[2] The State introduced the Motor Vehicle Recorder ("MVR")[3] and pointed out that Defendant was swaying back and forth during the HGN test. The second field test administered was the walk and turn test. Kirchenbauer testified that during the test Defendant exceeded the amount of steps she was

---

[2] The State is not relying on the HGN test since the Trooper was not qualified to administer it.
[3] State's *Exhibit 1*.

3

instructed to take and failed to place her feet "heel to toe." The MVR failed to show how Defendant placed her steps. The third and final test was the balance test. During the balance test, Defendant was unable to keep her leg in the air for the required time allocated. The MVR showed Defendant struggling to keep her foot in the air and she stated to the Trooper, "I am really trying." Ultimately, Defendant was placed under arrest for DUI. While placed in the back seat of the police car Defendant was asked her age which she quickly responded nineteen (19), and then laughed and stated, "I mean, twenty-one (21)."

On cross examination, Kirchenbauer testified that there were no photos taken of the accident and the alleged cups seen near and in Defendant's vehicle were thrown away. Furthermore, Kirchenbauer testified that Defendant's bloodshot, glassy, and watery eyes could have been caused by crying. During cross examination, defense counsel asked Kirchenbauer if he was aware that his vehicle headlights created a huge shadow that could have distracted Defendant during the walk and turn test. Defense counsel also asked Kirchenbauer if he was aware of the National Highway Traffic Safety Administration ("NHTSA") regulations that the officer should stay as still as possible so not to distract the Defendant. In addition, defense counsel pointed out on the MVR that Kirchenbauer failed to instruct Defendant to look at her feet during the walk and turn test; he only told her to look down at his feet during the instructions. Defense also questioned Kirchenbauer about the alleged accident and if he had inquired about any injuries Defendant may have sustained. Lastly, defense counsel inquired and stated to Kirchenbauer that this was a cold November night where Defendant seemed to be shivering when observed on the MVR and if this could affect her ability to balance on one leg.

4

## LEGAL STANDARD

To establish probable cause for a DUI arrest, the state "must present facts which suggest, when those facts are viewed under the totality of the circumstances, that there is a fair probability that the defendant has committed a DUI offense."[4] This totality consideration is based on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."[5] "The Court must examine the totality of circumstances surrounding the situation as viewed through the 'eyes of a reasonable trained police officer in the same manner or similar circumstances, combining the objective facts with such an officer's subjective interpretation to those facts.'"[6]

Probable cause to arrest for DUI rests upon the observations of the arresting officer, which includes the driver's performance on field sobriety tests.[7] In order to determine if field tests are reliable, the Court must decide if the field tests were administered in accordance with the NHTSA standards.[8] When field tests are not administered as required by NHTSA guidelines, the reliability of such tests are subject to question when determining probable cause.[9] The facts as established by the State are sufficient to support a finding of probable cause to take the Defendant into custody for further testing.

---

[4] *Lefebvre v. State*, 19 A.3d 287, 293 (Del. 2011).
[5] *State v. Cardona*, 2008 WL 5206771, at *3 (Del. Super. Dec. 3, 2008) (quoting *State v. Maxwell*, 624 A.2d 926, 928 (Del. 1993)).
[6] *State v. Kane*, No. 1210019022, 2014 WL 12684290, at *4 (Del. Com. Pl. Feb. 12, 2014); *See Woody v. State*, 765 A.2d 1257, 1262-64 (Del. 2000).
[7] *State v. Mulholland*, 2013 WL 3131642, at *4 (Del. Com. Pl. June 14, 2013) *citing Lefebvre* at 293.
[8] *Mulholland* at *5, *citing State v. Ministers*, 2006 WL 3844201, *5 (Del.Super.Dec.21, 2006).
[9] *Id.*

However, when determining the issue of guilt, the burden of proving each and every element of the offense beyond a reasonable doubt rests on the State.[10] A reasonable doubt is not a vague, impulsive or imaginable doubt, "but such a doubt as intelligent, reasonable and impartial men may honestly entertain after a conscience consideration of the case."[11] Thus, a reasonable doubt is a "substantial doubt."[12] That is, a reasonable doubt "means a substantial well-founded doubt arising from a candid and impartial consideration of all the evidence or want of evidence."[13] When a defendant argues that the evidence is insufficient to support the verdict, the relevant inquiry is whether, considering the evidence, including all reasonable inferences to be drawn therefrom, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[14]

As trier of fact, the Court is to assess the credibility of the witnesses and, where there is a conflict in the testimony, to reconcile these conflicts, "if reasonably possible[,] so as to make one harmonious story."[15] In doing so, the Court takes into consideration the demeanor of the witnesses, their apparent fairness in giving their testimony, their opportunities in hearing and knowing the facts about which they testified, and any bias or interest they may have concerning the nature of the case.[16]

---

[10] 11 *Del. C.* § 301; *State v. Matushefske*, 215 A.2d 443, 449 (Del. Super. 1965).

[11] *Matushefske*, 215 A.2d at 449.

[12] *Id.*

[13] *State v. De Jesus-Martinez*, 2014 WL 7671040, at *4 (Del. Com. Pl. Dec. 5, 2014) (quoting *State v. Wright*, 79 A. 399, 400 (Ct. Gen. Sess. 1911)) (internal quotation marks omitted).

[14] *Church v. State*, 11 A.3d 226 (Table) (Del. 2010) 2010 WL 5342963 at *1; *citing Dixon v. State*, 567 A.2d 854, 857 (Del.1989) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

[15] *Nat'l Grange Mut. Ins. Co. v. Nelson F. Davis, Jr., et. al.*, 2000 WL 33275030, at *4 (Del. Com. Pl. Feb. 9, 2000).

[16] *See State v. Westfall*, 2008 WL 2855030, at *3 (Del. Com. Pl. Apr. 22, 2008).

Title 21 *Del. C.* § 4177(a)(1) provides that, "[n]o person shall drive a vehicle . . . when the person is under the influence of alcohol," and Section (a)(4) provides that "such person shall not drive a motor vehicle when the person's alcohol concentration is .08 or more."[17] Therefore, in order for a person to be found guilty under Section 4177, the State must prove, beyond a reasonable doubt, that the defendant was under the influence of alcohol or drugs at the time of driving.[18]

## DISCUSSION

For the forgoing reasons, I find there was probable cause to take the Defendant into custody for DUI, but under the totality of the evidence, when considering all the testimony and other evidence, I find that such evidence fails to prove beyond a reasonable doubt the Defendant's guilt of the offenses charged. In reaching this conclusion I observed that this Court excluded the results of the chemical analysis of Defendant's blood in a prior opinion because of a discovery violation.

The only evidence provided at trial of the accident is that the Trooper came upon the Defendants vehicle in a personal resident's yard. There is no testimony or reconstruction analysis of how the accident occurred. There is evidence that there were cups present at the accident scene but there is no testimony regarding the contents of the cups or if their contents contained an alcohol beverage. The testimony indicates that the field tests were administered on a cold November night. The State does not rely upon the HGN test

---

[17] Del. Code Ann. tit. 21, § 4177 (West).
[18] *Lewis v. State*, 626 A.2d 1350, 1355 (Del. 1993).

7

because the Trooper did not qualify as a person who could administer such test, which leaves only the walk and turn and balance tests.

During the walk and turn test, Kirchenbauer failed to instruct the Defendant to look down at her feet throughout the test and when he moved to the side to get a better view of her footing, his movement appears to cast a large shadow in Defendant's path. Defense argues this shadow is significant but I find little weight in this argument. While there was a shadow of the Trooper, I fail to see how that could have altered Defendant's performance on the walk and turn test. However, the NHTSA instructions provide that the instruction given to the Defendant is a vital part of the test evaluation. Therefore, I give little weight to this test because while the testimony indicates the Trooper told the Defendant to look down, it is not clear whether he complied with the NHTSA instructions.

Defendant's performance on the balance test indicate that she swayed during instructions, put her foot down, and the test was terminated early for her safety. However, Kirchenbauer failed to inquire if Defendant believed she sustained any injuries from the alleged car accident prior to administering this test. This is a factor which the Trooper should have inquired prior to the test to rule out any related injury. Because of this unknown issue, the value of the test results, while considered, must be evaluated in light of this fact which could affect its reliability.

In sum, the evidence of alleged intoxication including the accident, confusion, admission of drinking alcohol, and trouble with balance were enough to arrest Defendant for DUI. However thereafter, the evidence becomes murky as to when the Defendant had recently consumed alcohol. There is no testimony about the time of day Defendant admits

8

to drinking. There is no evidence to the alleged cups or their contents. In the MVR, Defendant does not appear to be slurring her words or swaying while standing. Consequently, based upon the evidence in the record, the State has failed to prove beyond a reasonable doubt, the offenses charged on Defendant.

THEREFORE, Defendant is found NOT GUILTY of Count 1; Driving Under the Influence of Alcohol and NOT GUILTY of Count 2; Failure to Remain within a Single Lane. The State entered a Nolle Prosequi to the Possession of Marijuana charge prior to trial.

**IT IS SO ORDERED.**

_____
Alex J. Smalls,
Chief Judge

9