**Roger H. HENRY, Defendant
Below, Appellant,**

v.

**STATE of Delaware, Plaintiff
Below, Appellee.**

Supreme Court of Delaware.

Submitted March 16, 1977.

Decided April 21, 1977.

Robert C. Wolhar, Jr., Georgetown, for defendant-appellant.

Kenneth R. Abraham, Deputy Atty. Gen., Dover, for plaintiff-appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

DUFFY, Justice:

Defendant was convicted in the Superior Court of possessing a destructive weapon, in violation of 11 *Del.C.* § 1444, and on two counts of receiving stolen property, in violation of 11 *Del.C.* § 851. He appeals on the ground that certain tangible evidence was unlawfully seized from his dwelling house under a warrant which improperly authorized a search during the nighttime.[1] We reverse.

### I.

Our inquiry concerns not the search itself nor the basis for it but, rather, the time at which it occurred. And as to this, we look to 11 *Del.C.* § 2308, which governs a "search at nighttime." That statute provides:

"A search warrant shall not authorize the person executing it to search any dwelling house in the nighttime unless the judge, justice of the peace or magistrate is satisfied that it is necessary in order to prevent the escape or removal of the person or thing to be searched for,

---

[1] The State argues that defendant is barred from contesting the validity of the search in this Court since he did not raise the issue below. We regard the failure to comply with the statute as plain error and consider the issue cognizable on appeal. *Ward v. State,* Del. Supr., 366 A.2d 1194, 1197 (1976).

and then the authority shall be expressly given in the warrant."[2]

■ In plain language, § 2308 prohibits a judicial officer from issuing a warrant for a nighttime search unless he is satisfied that it is "necessary . . . to prevent the escape or removal of the person or thing to be searched for, . . . ." The elements of the requisite "satisfaction" and the documentation thereof are not announced in the statute but, clearly, something more is required than the Alice-in-Wonderland explanation offered by the State; namely, issuance of the warrant shows that the Magistrate was satisfied because he would not have issued it if he were not.

In construing 11 *Del.C.* § 2306, which specifies what an application for a search warrant must contain and 11 *Del.C.* § 2307, which authorizes a Magistrate to issue a warrant, we wrote in *Pierson v. State,* Del. Supr., 338 A.2d 571, 573 (1975), concerning the State's failure to allege the time of occurrence of the facts supporting the affidavit:

"While conceding the time deficiency in the affidavit, the State says that the magistrate had official knowledge that one of the burglaries had taken place thirty days before; earlier the same day he had issued a warrant for the arrest of defendant for the burglary in question. Hence, the argument runs, he knew that the information was at least that current and present probable cause was therefore shown. The contention is legally and logically untenable. Assuming that information thirty days old is not *prime facie* stale, the argument ignores the clear import of 11 Del.C. §§ 2306, 2307 and the pragmatic impossibility of judicial review of a magistrate's 'own knowledge.' Sections 2306 and 2307, [footnote omitted]

like Federal Criminal Rule 41(c), contemplate a 'four-corners' test for probable cause; sufficient facts must appear on the face of the affidavit so that a magistrate's personal knowledge notwithstanding, a reviewing Court can verify the existence of probable cause. Thus one looks only to the 'facts recited in the complaint.' Section 2307; 11 Del.C. § 2306. As was recently stated by the 5th Circuit in confronting a similar issue:

'The requirement that all facts relied upon by the magistrate be in a written affidavit insures that "the reviewing court may determine whether the constitutional requirements have been met without reliance upon faded and often confused memories." ' *United States v. Acosta,* 5th Cir., 501 F.2d 1330 (1974) citing *United States v. Anderson,* 9th Cir., 453 F.2d 174 (1971).

We agree with the *Acosta* Court that a magistrate's personal information cannot be used to save a defective affidavit."

■ We hold that the "four-corners" test is likewise applicable to the determination of whether a warrant may authorize a search at nighttime under § 2308. In other words, sufficient facts showing that a nighttime search is necessary to prevent the escape or removal of the person or thing to be searched for must appear on the face of the affidavit before such a search may be authorized. Only in this way can a reviewing Court verify existence of the statutory requirements.

## II.

■ Turning now to this appeal, we find nothing in the affidavit on which the search warrant was issued which in any way attempts to meet the mandate of § 2308. Indeed, there is not a word in the affidavit

---

**2.** This stringent requirement is not unique to Delaware. At last count, twenty-three States had similar statutes. Y. Kamisar, W. LaFave & J. Israel, *Modern Criminal Procedure* 32 (Supp. 1976), citing the Model Code of Pre-Arraignment Procedure 174–75 (Proposed Official Draft No. 1, 1972) which lists the statutes. Moreover, Fed.R.Crim.P. 41(c) provides in part: "The warrant shall be served in the daytime,

unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime." But see *Gooding v. United States,* 416 U.S. 430, 94 S.Ct. 1780, 40 L.Ed.2d 250 (1974). Daytime is defined as those "hours from 6:00 a. m. to 10:00 p. m. according to local time." Fed.R.Crim.P. 41(h).

about escape or removal of anything to be searched for. We also note that there was no factual basis for the search during the night under the circumstances shown in this record. Defendant was in custody of the police (on a disorderly conduct charge) when eight police officers descended on his trailer home at 11:30 P.M. while only his wife was there. Nothing whatever appears in this record to justify that intrusion.

It follows from this analysis that all evidence seized during the course of the search must be suppressed. This includes the Bearcat Scanner which was the principal target of the warrant. The scanner was noticed earlier in the day by a police officer while he was in defendant's trailer executing the arrest warrant for disorderly conduct. The officer recorded the serial number and subsequently ascertained that the scanner was stolen. It was seized during the search in issue here.

As to this piece of evidence, it is necessary to distinguish between its discovery and subsequent seizure. The discovery was not unlawful or tainted since it was in plain view of the Trooper who was lawfully present in defendant's trailer at the time of observation. But not so as to the seizure. The propriety of the seizure turns on the legality of the entry into the trailer at the time of seizure. And because the police were without authority to enter defendant's home during the night, it follows that they were without authority to seize the scanner *at that time*.[3] We conclude, therefore, that the scanner is a fruit of an unlawful search and seizure and, accordingly, must be suppressed. *Pierson*, supra at 574.

The judgment of the Superior Court is reversed and the case remanded for proceedings consistent herewith.

---

3. To support the validity of the seizure, the State asserts the well established "plain view doctrine." However, this is not helpful to the State since an essential element of the doctrine is lacking; namely, the police were not lawfully present in the trailer at the time of seizure of the scanner. *Miller v. State*, Del.Supr., 310 A.2d 867, 869 (1973).