**John F. HOPE, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: Sept. 6, 1989.
Decided: March 1, 1990.

---

Anthony A. Figliola, Jr., Figliola & Facciolo, Wilmington, for appellant John F. Hope.

Timothy J. Donovan, Jr., Dept. of Justice, Wilmington, for appellee the State of Del.

Before HORSEY, MOORE and HOLLAND, JJ.

MOORE, Justice.

John Hope, was convicted of theft, third degree burglary, and five counts of second degree forgery by a jury in Superior Court. On appeal, he contends that the trial judge improperly denied his motion to suppress evidence seized pursuant to a nighttime search warrant that allegedly was defective in form and issued without probable cause. He also contends that the trial judge abused his discretion in failing to grant a mistrial after a police detective testified that another suspect "didn't commit this burglary."

We find the appellant's contentions without merit and affirm his convictions. The nighttime search warrant in this case satisfied Delaware statutory requirements, and was consistent with this Court's prior decisions.[1] As to the detective's allegedly prejudicial statement regarding the other suspect's innocence, there was no abuse of discretion in denying a mistrial. The jury had ample evidence upon which to conclude that the appellant committed the burglary. Moreover, the appellant's defense was not rendered less credible by the elimination of one suspect out of the universe of "actual perpetrators" suggested by defense counsel.

I.

On the evening of September 17, 1987, a neighborhood grocery store in Wilmington was burglarized. Property taken included a money order machine, blank money orders, cigarettes, cash, food stamps, and a set of keys to the store. The owner of the grocery store initially told the police that she suspected an individual named Michael Hargrove, who she claimed had previously threatened to rob the store. After further discussion with the owner, the detective assigned to the case determined that no viable evidence connected Hargrove to the crime.

The store owner contacted the police again on September 21, at approximately 8:00 p.m., to inform them that she now suspected the appellant, John Hope, of the burglary. The owner claimed to have learned from local residents that Hope had committed the burglary and still held some of the stolen items at his home. In addition, the owner stated that Hope intended to take the stolen items out of state later that evening to be sold. At 8:45 p.m. the police interviewed a local resident who confirmed that she had seen the money order

---

1. We note the companion case of *Dixon v. State,* Del.Supr., 567 A.2d 854 (1989).

machine at Hope's house, and that Hope's girlfriend claimed to have cashed several money orders given to her by Hope. The police were unable, however, to verify that Hope intended to transport the property out of state that evening because the store owner refused to identify her other sources of information.

Later that evening the police sought and obtained a nighttime search warrant from the Municipal Court for the City of Wilmington. On its face the warrant lacked express language reflecting the need for a nighttime search to prevent the removal of evidence. Instead, it simply authorized a nighttime search: "This warrant my [sic] be executed in the nighttime as requested in the application, probable cause being shown for the issuance of a nighttime warrant by the attached affidavit." The attached affidavit specified the need for a nighttime search, relating the store owner's partially verified claim that Hope committed the burglary and intended to transport the stolen items out of state that evening.

During the ensuing search of Hope's house the police discovered the keys to the grocery, blank money orders, and money orders made payable to Hope. They did not recover the money order machine. Before trial Hope moved to suppress the evidence seized from his house on grounds that the nighttime search warrant was defective. Specifically, he claimed that the warrant failed to meet statutory form requirements, failed to list exigent circumstances justifying a nighttime search on the face of the warrant, and lacked a specific finding by a judicial officer that exigent circumstances existed to justify issuance of the nighttime warrant. The motion was denied.

At trial, Hope's defense was that he received the stolen property but did not commit the burglary. The State attempted to refute this claim. On direct examination by the State, the detective who investigated the burglary was questioned about the initial suspect, Hargrove. He responded that Hargrove was never arrested because "he didn't commit this burglary." Defense counsel objected and moved for a mistrial, which was denied by the trial judge.

On appeal Hope argues that the warrant was defective because it failed to contain a specific finding on its face that a nighttime search was required under the circumstances. Such a specific finding, he contends, was required by our decision in *Mason v. State*, Del.Supr., 534 A.2d 242 (1987). In addition, Hope argues that the attached affidavit failed to allege sufficient facts to constitute probable cause for the issuance of a nighttime search warrant. He contends that the affidavit was nothing more than a naked conclusion without corroboration that he intended to transport stolen property out of state. Finally, he claims that the detective's statement regarding the innocence of the other suspect, Michael Hargrove, was extremely prejudicial. He argues that the statement created grounds for a mistrial which was improperly denied by the trial judge.

## II.

The Delaware Criminal Code provides that a nighttime warrant may be issued only when it is "necessary in order to prevent the escape or removal of the person or thing to be searched for." 11 *Del.C.* § 2308. The statute does not require the warrant itself to contain this particular language, nor does it require the judge or magistrate to list other specific reasons for issuing the nighttime search warrant. The only form requirement that Section 2308 imposes is that "authority [for the nighttime search] shall be expressly given in the warrant." 11 *Del.C.* § 2308. Moreover, the statute does not prohibit the incorporation by reference to the specific factors enumerated in a supporting affidavit.

Similarly, Section 2310 provides sample forms for search warrants, but clearly they are not exclusive. Section 2310(c) provides a form for a nighttime search warrant of a dwelling house that "shall be sufficient." 11 *Del.C.* § 2310(c). That sample form contains the following language, consistent with Section 2308, authorizing a nighttime search: "I am satisfied that there is proba-

ble cause ... and that search of the premises in the nighttime is necessary in order to prevent the escape or removal of the person or thing to be searched for...." 11 *Del.C.* § 2310(c).

This Court's prior decisions involving nighttime searches have focused primarily on the substantive standard established in Section 2308 for issuance of a nighttime search warrant. In *Henry v. State,* Del. Supr., 373 A.2d 575 (1977), the Court applied a "four-corners" test to an affidavit attached to a warrant to determine whether sufficient facts existed to issue a nighttime search warrant. While the Court held that the facts alleged in the affidavit did not satisfy § 2308's substantive standard for issuing a warrant, *Henry* did not alter or expand the statutory form requirements for nighttime warrants.

The case of *Jensen v. State,* Del.Supr., 482 A.2d 105 (1984), involved a nighttime search warrant issued after a defendant became aware that police suspected he was involved in criminal activity. Applying *Henry*'s "four-corners" test, we found that the affidavit attached to the warrant stated sufficiently particularized facts to make a nighttime search necessary. *Id.* at 113 (alleging that defendant's awareness of the police investigation made it likely that he "would seek to remove or destroy any evidence linking him to the crime"). The Court also found that the warrant satisfied § 2308's form requirement because it "expressly authorized" a nighttime search. *Id.*

Finally, in *Mason v. State,* we invalidated a nighttime search warrant obtained from a local magistrate after the police illegally entered the defendant's apartment and held the defendant and his family in custody. As in *Henry* and *Jensen,* we discussed the substantive standards of § 2308, finding that the affidavit failed to allege sufficient facts to issue the warrant. *Mason,* 534 A.2d at 251–52. We also noted that the warrant in *Mason* failed to meet § 2308's statutory form requirements because it did not expressly authorize the police to conduct a nighttime search. *Id.* at 253 (partial text of warrant).

These prior rulings control our decision here. Although the police did not use the sample form contained in § 2310(c), the warrant on its face expressly authorized a nighttime search. It stated: "This warrant my [sic] be executed in the nighttime as requested in the application, probable cause being shown for the issuance of a nighttime search warrant by the attached affidavit." The authorization in the warrant, therefore, was not only consistent with § 2308, but it also complied with *Jensen,* in which nearly identical language was used. Despite the appellant's contentions, there is no requirement that a nighttime search warrant list exigent circumstances or contain a specific finding by the magistrate that probable cause exists to issue the nighttime warrant. *See Jensen,* 482 A.2d at 113.

Contrary to defendant's assertion, *Mason* did not overrule *Jensen.* Furthermore, *Mason* is factually distinguishable from the issues here. *Mason*'s discussion of the statutory form requirements of § 2310 was not critical to its holding that the affidavit failed to allege sufficient facts to justify a nighttime search. Thus, the essence of our decision in *Mason* was that issuance of the warrant failed to meet the substantive requirements of § 2308. Our discussion of the form of the warrant was directed primarily to the police's use of the wrong sample form. *See id.* at 253 (police used sample form where search in the nighttime is *not* authorized, § 2310(b), rather than sample form where search in the nighttime *is* authorized, § 2310(c)). That is not the circumstance here.

 The facts stated in the affidavit attached to the warrant constituted probable cause for a nighttime search. Although the store owner's specific claim, that Hope intended to transport the money order machine out of state, was based on sources she declined to identify, her general allegation that the stolen property was in Hope's possession was fully supported by an independent witness. Under all of the circumstances, this lent credibility to the affidavit.

### III.

Turning to the detective's statement on the witness stand that Michael Hargrove did not commit these crimes, mistrial is proper "whenever ..., taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *Fanning v. Superior Court*, Del. Supr., 320 A.2d 343, 345 (1974) (quoting *United States v. Perez*, 22 U.S. (9 Wheat.) 576, 6 L.Ed. 165 (1824)). Our standard of review is abuse of discretion. The trial judge is "necessarily in a better position ... to observe and determine the effect and possible prejudice of prosecutorial questioning." *Thompson v. State*, Del. Supr., 399 A.2d 194, 199 (1979).

The trial judge concluded that ample evidence was presented from which the jury could find the defendant guilty. The defense attempted to point the finger of suspicion at others, including Michael Hargrove, yet Hargrove was only one suspect out of the universe of persons suggested by Hope's counsel. The State's query was in response to that tactic, and although the detective's answer may have eliminated Hargrove from that universe of suspects, his statement did not directly implicate Hope.

The judgments of conviction are AFFIRMED.