# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,

v.

CARL M. RONE,

Defendant.

:
:
:
:
:
:
:

ID No. 1805001031

In and For Kent County

## OPINION AND ORDER

Submitted: September 7, 2018
Decided: September 17, 2018

*Upon Defendant's Motion to Suppress*
**GRANTED**

David Hume, IV, Esquire (argued), and Caroline C. Brittingham, Esquire, DEPARTMENT OF JUSTICE, Georgetown, Delaware, *for the State.*

Eugene J. Maurer, Jr., Esquire, Elise Kristin Wolpert, Esquire (argued), and Christina L. Ruggiero, Esquire, EUGENE J. MAURER, JR., P.A., Wilmington, Delaware, *for Defendant.*

Primos, J

This matter is before the Court on the motion to suppress of Defendant Carl Rone (hereinafter "Defendant"). Defendant challenges the validity of a warrantless search of his cell site location information (hereinafter "CSLI"), which Delaware State Police sought and acquired pursuant to Delaware's wiretap statute, 11 *Del. C.* § 2401 *et seq.* (hereinafter the "Wiretap Statute"). Defendant seeks suppression of CSLI gained by the search of his cell phone records. The facts cited herein are as found by the Court by a preponderance of the evidence following consideration of the parties' written submissions and their arguments at the hearing on September 7, 2018.

## I.    FACTUAL BACKGROUND

Defendant worked for many years as a firearms examiner for the Delaware State Police. Discrepancies between Defendant's submitted time sheets, his physical presence at the office, and other work documents were noted by one of his coworkers, who reported these facts to law enforcement. On January 31, 2018, the Delaware State Police, who suspected Defendant of submitting false time sheets, applied for an order from this Court to obtain the CSLI for a cell phone owned by Defendant (hereinafter the "Phone"). The application sought disclosure of records related to the use of the Phone, including historical call detail records with CSLI, for the timeframe of January 1, 2016, to January 18, 2018. To compel disclosure of cell phone records under the Wiretap Statute, law enforcement had to demonstrate that there was "reason to believe" that the records sought were "relevant to a legitimate law-enforcement inquiry."[1] This Court signed that order the same day, and copies of

---

[1]  11 *Del. C.* § 2423(d)(1).

2

the relevant data were turned over to the Delaware State Police by the Phone's service provider.

## II. ARGUMENTS OF THE PARTIES

Defendant filed the instant motion to suppress on July 30, 2018, arguing that the compelled disclosure of his CSLI constituted a search and that the search was not made pursuant to warrant or a warrant exception, thus violating Defendant's rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, § 6 of the Delaware Constitution.

The State agrees that the compelled disclosure of the CSLI constituted a search but argues that the application, affidavit, and order (collectively the "Application"), although not styled as a warrant, comport with the requirements for a search warrant. Additionally, the State contends that the CSLI would have been inevitably discovered, and in fact will be discovered a second time through a search warrant obtained on August 20, 2018. [2]

## III. LEGAL STANDARD

The burden is on the State to justify a warrantless search or seizure.[3] In a suppression hearing, the Court sits as the finder of fact and evaluates the credibility

---

[2] An application for a search warrant was filed on August 20, 2018 (after the current motion to suppress was filed), and was granted by the same judicial officer who had granted the initial application under the Wiretap Statute.

[3] *State v. Holmes*, 2015 WL 5168374, at *3 (Del. Super. Sept. 3, 2015), *aff'd* 149 A.3d 227 (Del. 2016).

of the witnesses.[4] The party with whom the burden rests must persuade the Court by a preponderance of the evidence.[5]

## IV.   DISCUSSION

### A. The *Carpenter* decision applies to this case.

Under well-settled Fourth Amendment jurisprudence, government searches must generally be undertaken pursuant to warrants supported by probable cause or under circumstances falling within a specific exception to the warrant requirement.[6] The Fourth Amendment to the United States Constitution mandates that "no Warrants shall issue, but upon probable cause." Similarly, the Delaware Code permits a judicial officer to issue a warrant only if he or she finds "that the facts recited in the complaint constitute probable cause for the search."[7]

The United States Supreme Court recently held in *Carpenter v. United States* that citizens have a legitimate expectation of privacy in the records of their physical movements as captured through CSLI.[8] In *Carpenter*, prosecutors applied for an order under the Stored Communications Act (hereinafter the "SCA") to acquire the defendant's cell phone records, including historical CSLI, for a seven-day period and a 127-day period."[9] The *Carpenter* court found that the compelled disclosure of the defendant's CSLI constituted "a search within the meaning of the Fourth

---

[4] *State v. Hopkins*, 2016 WL 6958697, at *2 (Del. Super. Nov. 28, 2016).
[5] *State v. Lambert*, 2015 WL 3897810, at *3 (Del. Super. June 22, 2015).
[6] *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652–653 (1995); *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).
[7] 11 *Del. C.* § 2307(a).
[8] 138 S.Ct. 2206, 2217 (2018).
[9] *Id.* at 2212.

Amendment" that was conducted without a warrant and did not fall within a specific exception to the warrant requirement.[10]

Here, the Court finds that the *Carpenter* ruling -- that law enforcement must generally obtain a search warrant supported by probable cause before acquiring CSLI from a wireless carrier -- is directly applicable to the case at hand. Indeed, the State concedes the applicability of *Carpenter*, and in its response to the motion to suppress states that "a search within the meaning of the Fourth Amendment occurred." The language of the Wiretap Statute and of the SCA is functionally identical: Delaware's statute requires a showing of "reason to believe" that the records sought are "relevant to a legitimate law-enforcement inquiry,"[11] while the SCA requires "reasonable grounds to believe" that the records "are relevant and material to an ongoing criminal investigation."[12]

### B. The order issued pursuant to the Application did not constitute a search warrant.

The State seeks to distinguish the facts of this case from those in *Carpenter* by arguing that the Application comported with all the requirements for a search warrant under the Delaware Code. In short, 11 *Del. C.* § 2306 requires that the application or complaint for a search warrant be in writing, signed by the complainant, and verified by oath or affirmation, and that it designate the objects of the search, the reasons for the search, and the facts supporting the suspicion that the items sought will be found there.

---

[10] *Id.* at 2220, 2221.
[11] 11 *Del. C.* § 2423(d)(1).
[12] 18 U.S.C. § 2703(d).

5

The Court agrees that the validity of a warrant should not turn on formalistic considerations: a reviewing Court is to employ a "common sense" rather than a "hypertechnical" approach to the relevant documents.[13] Even so, the Court finds that the text of 11 *Del. C.* § 2423 makes clear that orders issued pursuant to the Wiretap Statute were not intended by the General Assembly to be search warrants.[14] This fact is relevant to the Court's understanding of what the reviewing judge intended when the Application was granted and an order compelling disclosure was issued.

While the Application met many of the warrant requirements set forth in the Delaware Code, the critical inquiry in this case is whether the document purporting to be a warrant in this case fulfills the essential requirement demanded of all warrants, that it was issued upon probable cause.[15] On its face, the Application does not appear to satisfy that requirement: the Wiretap Statute does not require a showing or a finding of probable cause, and the order granting the Application did not note a finding of probable cause.[16] While the State argues that the information included in the Application would have been sufficient to support a finding of probable cause, no such finding was made. The order signed by the reviewing judge in this case reads only that there were "reasonable grounds" to believe that the cell phone records,

---

[13] *Jensen v. State*, 482 A.2d 105, 111 (Del. 1984).

[14] Orders requiring disclosure under § 2423(d) are not search warrants because the wiretap statute identifies "a search warrant from a court of competent jurisdiction" and "a court order requiring the disclosure under subsection (d) of this section" as separate justifications for compelling a service provider to disclose cell phone records. 11 *Del. C.* §§ 2423(c)(2)b., 2423(c)(2)c.

[15] "Probable cause" has been described by the United States Supreme Court as a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 214 (1983).

[16] The Wiretap Statute requires only a showing of a reason to believe that the evidence to be found is "relevant to a legitimate law-enforcement inquiry," not that the evidence sought constitutes evidence of a crime. 11 *Del. C.* § 2423(d)(1). In interpreting the similarly worded SCA, the *Carpenter* Court described the required showing of "reasonable grounds" of relevance to an ongoing investigation as falling "well short of the probable cause required for a warrant," and "a 'gigantic' departure from the probable cause rule." *Carpenter*, 138 S.Ct. at 2221.

6

including CSLI, were "relevant to an ongoing criminal investigation." Nothing in the Application states or suggests that there was a fair probability that the CSLI would contain evidence of Defendant's alleged falsification of business records.

The State has attempted to argue the applicability of the Delaware Supreme Court's decision in *Hope v. State*, which the State cites for the proposition that "there is no requirement that a nighttime search warrant . . . contain a specific finding by the magistrate that probable cause exists to issue the nighttime warrant."[17] By analogy, the State contends that there is no requirement that a search warrant contain a specific finding of probable cause that evidence of a crime will be found in the particular place to be searched. The analogy is inapt. While "probable cause to search" and "probable cause to issue a nighttime warrant" are linguistically similar, the two requirements are born from separate sources of legal authority and follow different rules.

The requirement that a search warrant be issued upon a finding of probable cause arises from the Fourth Amendment to the United States Constitution; Article 1, Section 6 of the Delaware Constitution; and 11 *Del. C.* § 2307. In contrast, the requirement for a finding of "probable cause to issue a nighttime warrant" stems from 11 *Del. C.* § 2308, and is a separate requirement in addition to the "probable cause to search" requirement that all warrants must satisfy. 11 *Del. C.* § 2308 provides additional protections to the people of Delaware by permitting nighttime searches only under certain circumstances, specifically, only when "the judge, justice of the peace or magistrate is satisfied that it is necessary in order to prevent the escape or removal of the person or thing to be searched for." The *Hope* court correctly noted that 11 *Del. C.* § 2308 does not require a nighttime warrant "to list

---

[17] 570 A.2d 1185, 1188 (Del. 1990).

exigent circumstances or contain a specific finding by the magistrate that probable cause exists to issue the nighttime warrant." 570 A.2d at 1188. The language used in 11 *Del. C.* § 2307 does, however, require a finding of probable cause to search, permitting the issuance of search warrants only if the magistrate "*finds* that the facts recited in the complaint constitute probable cause for the search."[18]

The Court is aware of decisions in other jurisdictions that have held that formal findings of probable cause, or of certain facts supporting probable cause, are not essential for a warrant to be validly issued. In those cases, however, the lack of a formal finding was considered trivial because the issuance of the warrant implied a finding of probable cause,[19] or gave rise to a presumption that the reviewing judge concluded that there was probable cause.[20] The logic of those decisions does not apply to a case where the reviewing judge did not receive a document purporting to be a search warrant application, and did not issue a document purporting to be a search warrant.

The Court therefore finds that the search of Defendant's CSLI was unsupported by warrant and, further, that the State has presented no facts or argument demonstrating an exception to the warrant requirement. Moreover, the intrusion upon Defendant's privacy is more egregious than what was found intolerable in *Carpenter*. In *Carpenter*, the compelled disclosure of a "detailed and comprehensive record of the [defendant's] movements"[21] for seven days constituted

---

[18] 11 *Del. C.* § 2307(a) (emphasis added).

[19] *Coleman Cty. Country Club v. State*, 236 S.W.2d 558, 560 (Tex. Civ. App. 1951).

[20] *Chruscicki v. Hinrichs*, 197 Wis. 78, 221 N.W. 394, 396 (1928).

[21] *Carpenter*, 138 S.Ct. at 2217.

a search.[22] Here, Defendant's particular movements were subjected to "tireless and absolute surveillance"[23] for a period of over two years.

### C. The inevitable discovery doctrine is inapplicable, and whether evidence obtained through the August 2018 search warrant should be suppressed is not before this Court.

The State further argues that the related doctrines of inevitable discovery and independent source bar suppression of the evidence at issue. Pursuant to the inevitable discovery doctrine, evidence that "would inevitably have been discovered through independent, lawful means" is admissible.[24] Under the independent source doctrine, where the government engages in illegal investigatory activity but also obtains the evidence independently through lawful means, the court will admit the evidence. *Id.*

The State has failed to explain how the inevitable discovery doctrine applies to this case, and the Court finds it inapplicable. This is not a situation, as in *Nix*, where, at the time that law enforcement engaged in illegal activity (the interrogation of the defendant in violation of his Sixth Amendment rights leading to the disclosure of the location of the victim's body), law enforcement had begun a lawful search that would have led to the discovery of the body; or as in *Norman*, where the Delaware Supreme Court found that the defendant's incriminating statements would inevitably have been discovered in the course of a lawful investigation.

---

[22] *Id.* at 2217 n.3 ("we need not decide whether there is a limited period for which the Government may obtain an individual's historical CSLI free from Fourth Amendment scrutiny, and if so, how long that period might be. It is sufficient for our purposes today to hold that accessing seven days of CSLI constitutes a Fourth Amendment search.").

[23] *Id.* at 2218.

[24] *Norman v. State*, 976 A.2d 843, 859 (Del. 2009) (*citing Nix v. Williams*, 467 U.S. 431, 444 (1984)).

With regard to the independent source doctrine, the State argues that it could seek the evidence in question through a lawful, independent source, and has actually done so through the August 2018 warrant application. That search warrant, however, is not before the Court. Through this motion, Defendant seeks to suppress only evidence obtained through the Application, which was submitted in January 2018. Furthermore, it does not appear, based upon the State's written submission and its statements at oral argument, that the State has yet obtained information pursuant to the August 2018 warrant. Finally, Defendant asserted through counsel at oral argument that he has independent grounds upon which to challenge the August 2018 warrant, and it would thus be inappropriate for the Court to consider the validity of that warrant in deciding the instant motion. Therefore, the Court cannot consider possible application of the independent source doctrine at this time.

## V. CONCLUSION

**WHEREFORE**, for the foregoing reasons, Defendant's motion to suppress must be **GRANTED**.

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

NEP/wjs
*Sent via email & U.S. Mail*
oc:    Prothonotary
cc:    Eugene J. Maurer, Jr., Esquire
       David Hume, IV, Esquire