# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | : | |
| | : | ID No. 2201001944 |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KYLE LEONARD, | : | |
| | : | |
| | : | |
| Defendant. | : | |

Submitted: March 13, 2023
Decided:    March 22, 2023

## <u>ORDER</u>

*Defendant's Motion to Suppress Evidence –* **DENIED**

On this 22nd day of March 2023, after considering the evidence presented at a suppression hearing on March 13, 2023, and the submissions and arguments of the parties, it appears that:

1.      Defendant Kyle Leonard's trial for Murder First Degree and Possession of a Firearm During the Commission of a Felony is scheduled to begin on May 22, 2023.  The State alleges that Mr. Leonard shot and killed his mother inside their home in January 2022 after an argument.   The State further alleges that shortly after Mr. Leonard shot her, he called a 9-1-1 dispatcher and reported the incident.  As a result, members of the Delaware State Police ("DSP") arrived at the scene, asked Mr. Leonard to exit the home, and arrested him.   DSP officers then entered the residence to perform a protective sweep for safety purposes,[1] and when they

---

[1] *See Maryland v. Buie*, 494 U.S. 325, 334–35 (1990) (recognizing that a protective sweep is an exception to the warrant requirement justified by an emergency, and that the scope of the search

concluded the sweep they waited in the residence's kitchen until a detective secured a search warrant. When a magistrate at the Justice of the Peace Court No. 2 issued the warrant at 9:19 p.m., the detective who secured it then emailed it to a detective onsite.

2. At the outset, both parties agree that the warrant justified a daytime search of Mr. Leonard's residence.[2] They further stipulate that the warrant did *not* justify a nighttime residential search because it did not meet the requirements of 11 *Del. C.* § 2308 ("Section 2308"). In relevant part, Section 2308 provides:

> [a] search warrant shall not authorize the person executing it to search any dwelling house in the nighttime unless the judge . . . is satisfied that it is necessary in order to prevent the escape or removal of the person or thing to be searched for, and then the authority shall be expressly given in the warrant. For purposes of this section[,] the term "nighttime" shall mean the period of time between 10:00 p.m. and 6:00 a.m.[3]

The parties agree, and the probable cause affidavit confirms, that the detective recited no facts to demonstrate the necessity for a nighttime search as required by Section 2308 (hereafter a "nighttime search" or relatedly a "nighttime warrant").[4] Nor did the issuing magistrate grant authority for such a search when he approved the warrant.[5]

3. Accordingly, Mr. Leonard's suppression motion turns on the timing of execution – that is, whether the police began their search of Mr. Leonard's residence during the day or at night, as Section 2308 defines those terms. If the police conducted a nighttime search with a daytime warrant in hand, they unlawfully executed the warrant. If that is the case, the Court must suppress the evidence unless

---

does not include a full search of the premises, but rather is permitted only as a cursory inspection to secure occupant safety).

[2] Def.'s Mot. to Suppress, Ex. A.

[3] 11 *Del. C.* § 2308.

[4] Def.'s Mot. to Suppress, Ex. A.

[5] *Id.*

2

an exception to the warrant requirement applies. Furthermore, the warrant must meet heightened 2308 standards only when the police *begin* the search after 10:00 p.m., and before 6:00 a.m.[6] Accordingly, there is no nighttime search if the police start a search before 10:00 p.m. that extends into the early morning hours.[7]

4. Delaware decisional law does not address challenges to the lawful execution of warrants to the extent that it addresses other search and seizure issues. For instance, it is well settled that a challenge to the sufficiency of a warrant for lack of probable cause to support the warrant permits only a four-corners review of the affidavit of probable cause (a "four corners review").[8] In those cases, the Court cannot consider extrinsic evidence. When a suppression motion challenges a warrantless search or seizure (a "warrantless search"), however, the Court holds an evidentiary hearing that includes extrinsic evidence, including testimony.[9]

5. Mr. Leonard's motion poses a different question because it straddles these two categories. Superior Court Criminal Rule 41(f) impliedly acknowledges that the Court may consider extrinsic evidence when deciding Mr. Leonard's challenge to the execution of a search warrant even though the contents of the warrant are central to his motion.[10] Here, Mr. Leonard justified, and the State has conceded, the need for an evidentiary hearing. Because the Court agreed to hear

---

[6] *Johnson v. State*, 676 A.2d 904, 1996 WL 69829, at *1 (Del. Feb. 9, 1996) (TABLE).

[7] *See State v. Herhal*, 307 A.2d 553, 556–57 (Del. Super. 1973) (considering the issue as a matter of first impression in Delaware and recognizing that federal law on the issue recognizes that a daytime warrant is sufficient so long as the search begins during the daytime, even if it continues through the night).

[8] *Jensen v. State*, 482 A.2d 105, 110–13 (Del. 1984) (quoting *Henry v. State*, 373 A.2d 575, 577 (Del. 1977)).

[9] *State v. Lambert*, 2015 WL 3897810, at *3 (Del. Super. May 29, 2015), *aff'd*, 149 A.3d 227 (Del. 2016).

[10] *See* Super. Ct. Crim. R. 41(f) (providing that the court generally shall not hear extrinsic evidence on execution or veracity of search warrants without an accompanying affidavit, unless its absence is satisfactorily explained); *see also Dunfee v. State*, 346 A.2d 173, 176 (Del. 1975) (examining the lawfulness of warrant execution based upon extrinsic evidence).

evidence, the undersigned sat as the finder of fact, assessed witness credibility, and made findings based upon a preponderance of the evidence.[11]

6.     At the hearing, the Court raised an unanswered procedural question regarding who holds the burden of proof when a defendant challenges the execution of a warrant. Delaware law provides clear answers to the burden of proof questions when there is a four-corners review or a warrantless search at issue. Namely, the defendant bears the burden of proof in a four-corners review.[12] On the other hand, the State bears the burden of proof if there was a warrantless search or seizure.[13]

7.     When the Court asked the parties' positions regarding who held the burden in this situation, they agreed that the State should bear it. Neither party identified Delaware or persuasive authority for the premise, however. For expediency purposes and because the parties did not fully develop the issue,  the Court elects to  assign the burden of proof to the State by party stipulation. The Court does so while recognizing that (1) there is no mandatory or Delaware persuasive authority on the issue, and (2) there is a split of authority in other jurisdictions regarding the question.[14]

8.     After settling on procedure, the Court next examines the parties' arguments. Mr. Leonard contends that the search did not begin until one of the detectives began cataloging and collecting evidence. For that premise, Mr. Leonard relies on an entry in Detective Lowe's written report that records that the search began when he started to collect evidence after 10:00 p.m.

---

[11] *State v. Hopkins*, 2016 WL 6958697, at *2 (Del. Super. Nov. 23, 2016) (citing *Turner v. State*, 957 A.2d 565, 570–71 (Del. 2008)).

[12] *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. 2005), *aff'd*, 903 A.2d 288 (Del. 2006).

[13] *Hunter v. State*, 783 A.2d 558, 560 (Del. 2001).

[14] *See, e.g.*, *United States v. Vigo*, 413 F.2d 691, 693 (5th Cir. 1969) (recognizing that the defendant has the burden of proof when challenging the execution of a warrant); *c.f., e.g.*, *State v. Stephenson*, 245 N.W.2d 621, 623 (Minn. 1976) (recognizing that under Minnesota law, the State bears the burden when there is a challenge to the execution of a warrant).

4

9.     The State counters that the search began almost immediately after the magistrate issued the warrant. It relies on the dictionary definition of a search and applies the facts to that definition. To this end, it alleges that DSP's search began when Sergeant Cox, an evidence collection officer, began looking about the residence after the police received the warrant. The State contends that the search, by any common and ordinary definition, began immediately after 9:19 p.m. and was well underway before 10:00 p.m.

10.     After considering the parties' arguments and the evidence presented at the hearing, the Court makes the following findings of fact. First, DSP officers arrived at Mr. Leonard's residence at approximately 7:30 p.m. on the evening of January 7, 2023, after Mr. Leonard called 9-1-1 to report that he had killed his mother. The police then arrested him and performed a protective sweep of the residence. When performing the sweep, they observed certain items in plain view, including Ms. Leonard's body in a living room chair, bullet holes, expended cartridges, blood spatterings, and a 9 MM pistol in a bedroom. After the officers finished a lawful protective sweep, they waited for a warrant before performing a full search of the residence.[15] The onsite officers took no other relevant action until they received the signed warrant.

---

[15] Mr. Leonard's motion identified one basis to suppress evidence: the lack of a nighttime warrant. As a result, his filings fairly raised no other issues. After the conclusion of the evidence, however, the Court raised a separate issue with the parties and will provide further comment on the matter. Namely, the police remained in the home for more than an hour after they completed their protective sweep. The Court asked the parties whether doing so exceeded the scope of the emergency-justified search. *See Buie*, 494 U.S. at 336 (holding that the sweep may last no longer than necessary to dispel the reasonable suspicion of danger and, in any event, no longer than it takes to complete the arrest and depart the premises). To the extent that DSP officers exceeded the lawful scope of a protective sweep by remaining in the premises, the facts in this case are indistinguishable, in relevant part, from those in *Lambert*, 2015 WL 3897810, at *3, which applied the inevitable discovery doctrine. In this case, as in *Lambert*, the discovery of the evidence became inevitable once the police lawfully secured the home after the protective sweep. Here, Ms. Leonard's body remained in the home, and the police arrested and committed Mr. Leonard to pre-trial custody. Although the inevitable discovery doctrine would otherwise apply under these circumstances, it does not come into play because (1) there was a lawfully executed warrant, as

11.     At 9:19 p.m., Justice of the Peace Court No. 2 issued a warrant that authorized a daytime search, not a nighttime one.   The detective who had secured the warrant emailed it to an onsite DSP detective within minutes after its issuance. DSP Sergeant Cox was in the kitchen with the detective who received the warrant and began his search shortly thereafter.   Detective Lowe, an evidence collection technician for DSP's homicide unit, arrived at the scene at 10:05 p.m.  By the time he arrived, Sergeant Cox had already finished his initial search.   At that point, Detective Lowe catalogued and collected the physical evidence that Sergeant Cox showed him.  Given these findings, the Court applies a commonsense inference that Sergeant Cox (and other officers) began their search well before 10:00 p.m.   An entry and exit log for the unit maintained by another trooper supports that finding.[16] Namely, her log recorded that Sergeant Cox remained in the residence from 9:10 p.m. to 9:34 p.m.[17]  He then returned inside the unit at 9:52 p.m. and left again before 10:00 p.m.[18]

12.     Given these findings, no nighttime warrant was necessary because the State met its burden of demonstrating that the search began before 10:00 p.m.[19] Multiple DSP officers remained in the home after the protective sweep and waited for the warrant to arrive.  It would strain common sense to conclude that DSP's officers, some of whom responded after standard working hours, would delay their search for forty minutes after they received the warrant.[20]

---

explained *infra*, (2) the police observed nearly all the evidence in plain view during their initial sweep, and (3) Mr. Leonard did not fairly raise the issue in his motion, so the State did not have fair notice that they needed to present additional evidence on the issue.

[16] *See* Suppression Hr'g State's Ex. 1 (DSP crime scene entry and exit log).

[17] *Id.*

[18] *Id.*

[19] *See Johnson*, 1996 WL 69829, at *2 (recognizing that a search that commenced at 9:30 p.m., and extended past 10:00 p.m., did not constitute a nighttime search pursuant to Section 2308).

[20] The Court does not question the good faith basis for Mr. Leonard's motion by making this reference to commonsense.  To the contrary, Mr. Leonard filed his motion in reasonable reliance on Detective Lowe's report, which recorded the search as beginning at 10:05 p.m.   The evidence

13. As a final matter, Mr. Leonard's argument that the search began when Detective Lowe started to collect and catalog the evidence is not persuasive. The dictionary definition of a search is "[t]o make a thorough examination of or look over."[21] Here, the police were in the home, ready to go, and commenced their search when they began to "look over" the premises after they received the warrant. Mr. Leonard's contention that Detective Lowe first executed the warrant conflates the concept of search with seizure. Here, although the *seizure* of evidence began after 10:00 p.m. when Detective Lowe started collecting the evidence, the *search* began before 10:00 p.m. For these reasons, the fact that Detective Lowe first began to collect and catalog the evidence after 10:00 p.m. is of no import.

WHEREFORE, for the reasons explained above, Defendant Kyle Leonard's motion to suppress is **DENIED**. The DSP officers began their search of Mr. Leonard and his mother's home prior to 10:00 p.m. and then seized the challenged evidence pursuant to a lawfully executed warrant.

**IT IS SO ORDERED.**

/s/Jeffrey J Clark
Resident Judge

oc: Prothonotary
sc: Counsel of Record

---

adduced at the hearing, however, provides a more complete picture and drives the Court's inference that other officers began their search before 10:00 p.m.

[21] *Search*, *The American Heritage Dictionary* (2d ed. 1982); *see also Search*, *Black's Law Dictionary* (6th ed. 1991) (defining a search to include "[a]n examination of a person's house or other buildings or premises . . . with a view to the discovery of . . . some evidence of guilt").